**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
FAREED HEERA,

                      Plaintiff,

  -against-

ALEJANDRO MAYORKAS, Secretary,
Department of Homeland Security;

MERRICK GARLAND, Attorney General
of the United States;

ANTONY BLINKEN, Secretary of State
of the United States,

UR M. JADDOU, Director, U.S. Citizenship
and Immigration Services,

ANDREA QUARANTILLO, New York District,
U.S. Citizenship and Immigration Services,

                      Defendants.
----------------------------------------------------------X

Docket No.

**COMPLAINT**

## PRELIMINARY STATEMENT

1.    The Plaintiff, FAREED HEERA ("Mr. Heera"), brings this action seeking the Court to review the decision of the U.S. Citizenship and Immigration Services (the USCIS), who has refused the 1485 Application to Register Permanent Residence or Adjust Status of Mr. Heera on invalid grounds.

2.    On July 27, 2021, Mr. Heera filed a Form I-485, Application to Register Permanent Residence or Adjust Status, with U.S. Citizenship and Immigration Services (USCIS) under section 245 of the Immigration and Nationality Act (INA).

3.    On October 12, 2022, Mr. Heera appeared for an interview to determine his eligibility for adjustment of status. During the interview and review of his application with an

Immigration Services Officer, he testified that the information on his Form I-485, along with the amendments made during the adjustment interview and supporting evidence, were true and correct.

4. On April 21, 2023, the USCIS issued a Decision rejecting the Form I-485 application of Mr. Heera on the grounds of Section 212(a)(6)(C)(i), which prohibits the issuance of Form I-485 to any alien who attempts to defraud or misrepresent material facts to the U.S. Government in matters related to the INA. ***See annexed Form I-485 Denial Decision, Exhibit A.***

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to the Mandamus Act, 28 U.S.C § 1361, in conjunction with 28 U.S.C. §1331; the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b); and the Immigration and Nationality Act ("INA"), codified in Title 8 of the U.S.C., and regulations implementing it (Title 8 and parts of Title 22 of the Code of Federal Regulations).

6. The petition herein was properly presented pursuant to the INA and regulations thereunder. See 8 U.S.C. § 1154(b), 22 C.F.R. § 42.1 et seq.

7. The venue is proper in this district pursuant to 28 U.S.C. § 1391 (e) because Plaintiff Heera resides in Queens, New York (Zip Code - 11423) and a substantial portion of the events giving rise to this claim occurred in this District. Further, this is an action against a federal officer in which no real property is involved.

## PARTIES

8. Plaintiff, MR. FAREED HEERA, a resident of Queens County, New York, is the Petitioner and contends that his Form I-485 application was wrongfully rejected by USCIS.

9. Defendant ALEJANDRO MAYORKAS is the Secretary of the Department of Homeland Security (DHS). The Homeland Security Act of 2002, Pub.L.107-296, created DHS to

perform the duties of the Immigration and Naturalization Service. Secretary Alejandro Mayorkas's responsibilities, as outlined in 8 U.S.C. §§ 1103(a)(1)-(3), are, *inter alia*, to administer and enforce the Immigration Act and all other laws relating to the immigration and naturalization of aliens; to control, direct and supervise all DHS employees; to establish such regulations, issue such instructions, and perform such other acts deemed necessary for carrying out his authority; and to require any DHS employee to perform or exercise the powers, privileges, or duties conferred or imposed by this Act or regulations issued thereunder. Mr. Alejandro Mayorkas is being sued in his official capacity.

10. Defendant, MERRICK GARLAND, is the Attorney General of the United States.

11. Defendant, ANTONY BLINKEN, is the Secretary of the Department of State.

12. Defendant, UR M. JADDOU, is the Director of U.S. Citizenship and Immigration Services, a position created by § 451 of the Homeland Security Act. Pursuant to § 451 of the Homeland Security Act, Mr. Ur M. Jaddou administers the provisions of the INA through the agents and officials of USCIS, the functions of which were previously performed by the Commissioner and District Directors of the Immigration and Naturalization Service. He oversees the operations of USCIS personnel, who adjudicate foreign nationals' applications to adjust to LPR status, eligibility for waivers of inadmissibility for LPR status, and motions to reopen, motions to reconsider, as well as appeals from, any action denying such applications or petitions. Mr. Cuccinelli is being sued in his official capacity.

13. Defendant, ANDREA QUARANTILLO, is the Director of the New York District Office of U.S. Citizenship and Immigration Services. She has the authority to adjudicate the applications for adjustment of status filed in New York, NY. Andrea Quarantillo is being sued in her official capacity.

## APPLICABLE LAW

14. The APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. §702. The defendants' arbitrary and capricious adjudications on Mr. Heera' application to register as a Permanent Resident of the U.S. have affected his ability to adjust legal status, as well as perpetuated hardship from which Mr. Heera and his family continues to suffer. Therefore, the Plaintiff has standing to bring this suit under the APA.

## STATEMENT OF FACTS

15. Mr. Heera is a native and citizen of Trinidad and Tobago and was born on April 26, 1972. ***See annexed Mr. Heera's Birth Certificate, Exhibit B.*** He married Joslyn Heera on October 3, 1992, and they had three children named Justin, Abigail, and Brandon. ***See annexed Marriage Certificate, Exhibit C.*** His daughter Abigail was born in the US, making her a US citizen. ***See annexed Daughter's Birth Certificate, Exhibit D.*** Mr. Heera came to the US on a tourist visa on February 09, 1999, and his I-94 expired on August 08, 1999. ***See annexed Mr. Heera's US Visa, Exhibit E.*** Since then, he has continuously lived in the US with his family. He has been a law-abiding resident of the United States since, contributing positively to society by not only maintaining steady employment and owning properties, but also by fulfilling his tax obligations.

16. Mr. Heera, in an attempt to adjust his status to that of a LPR, took legal services from various law and/or consultation firms in the US. However, the outcome was different from what Mr. Heera expected.

17. On November 15, 2010, Mr. Heera, through Salis and Associates P.C., filed Form I-360 Petition for Amerasian Widow(er) or Special Immigrant as a parent of an abusive USC daughter or son together with Form I-485. Both applications were denied because his alleged

abusive daughter did not meet the required age under the Immigration and Nationality Act. ***See annexed I-360 Denial Order, Exhibit F, and the I-485 Denial Order, Exhibit F-1.*** The order was appealed to the Board of Immigration Appeals ("BIA) on November 01, 2011, but the appeal was also denied. ***See annexed stamped Form l-290B, Exhibit G.***

18. Following the denials, Mr. Heera sought help from another consulting agency, Kims Consultation & Advisor LLC, to help him adjust his status. ***See the annexed Contract between Mr. Heera and the Agency, Exhibit H.*** On February 16, 2017, Mr. Heera, with the help of the said Agency, filled out and filed Form I-360—this time as a VAWA self-petitioning spouse of an abusive USC or LPR. The form indicated that the name of the alleged abusive spouse was "Tieesha Dew," a natural-born USC. An RFE was issued by the USCIS directing him to present further evidence, but no response was made. Consequently, on April 23. 2021. USCIS denied the said application. ***See annexed RFE, Exhibit I***; ***the Redacted First Page of Form I-360 with the stamp "Denied," Exhibit I-1***; and ***See annexed Denial Order, Exhibit I-2.***

19. Meanwhile, pending a decision on the l-360 (dated 2017), on August 30, 2017, Mr. Heera, with the help of the same agency, filed another I-360 and l-485 as a self-petitioning spouse of the same abuser "Tieesha Dew." But just like the previous applications, they were also denied. ***See annexed Redacted Page of l-485 with the stamp "Denied," Exhibit J; l-485 Denial Order, Exhibit J-1: Redacted Page of-360 with the stamp "Denied," Exhibit J-2*** and ***the I-360 Denial Order, Exhibit J-3.***

20. After the aforementioned denials, on July 27, 2021, Mr. Heera, through the Law Office of Indra Pal, filed another l-485 based on an approved l-130 filed by Mr. Heera's son, Justin. ***See annexed Receipt Notice, Exhibit K,*** and ***the Approval Notice, Exhibit L.*** An RFE was issued in November 2021, requiring the submission of I-864, which Mr. Heera complied with. ***See the***

*annexed Cover Letter Showing the subsequent submission of the required Form, Exhibit M.* Mr. Heera was interviewed on October 12, 2022, by a USCIS officer in relation to his I-485. *See annexed Affidavit-Witness of Mr. Heera, Exhibit N.* Thereafter, another RFE was issued on October 21, 2022, and whose subsequent response was also rejected. *See annexed RFE, Exhibit O,* and *the Rejected Response to RFE, Exhibit P.*

21. On April 21, 2023, the USCIS issued a Decision rejecting the Form I-485 application, which is the subject of this present suit. *See Exhibit A.*

22. Mr. Heera did not intend to commit fraud against the U.S. government by misrepresenting significant facts so as to adjust his status. To emphasize, Mr. Heera lacked sufficient knowledge on the application process and depended heavily on his previous lawyers and representatives. In all those times, he believed he was submitting the correct application based on proper grounds as per the advice of his previous counsel. Thus, Mr. Heera was unaware of the deception made by his former counsel and agencies. *See annexed Mr. Heera's Affidavit, Exhibit Q.*

23. The fraudulent actions taken by his previous counsel were entirely unbeknownst to him. As a diligent and law-abiding individual, he believed his representative was acting in his best interests. This misinformation and fraudulent representation significantly contributed to the adverse outcome of his case.

24. In light of the aforementioned circumstances, I respectfully request that this court review the denial decision for Mr. Fareed Heera's Form I-485 application. It is evident that Mr. Heera was a victim of circumstances beyond his control, specifically the false representations made by his former legal representatives, which led to the submission of incorrect information.

# CAUSES OF ACTION

25. The Plaintiff makes four primary arguments as to why his challenge to the denial of his adjustment of status should be allowed to proceed. These include:

   a) Mr. Heera Was a Victim of Fraud and Bad Legal Advice;
   b) Mr. Heera Has Not Committed Wilful Misrepresentation Under INA;
   c) Due Process Violation, and
   d) Equitable Relief and Administrative Review.

### A. Mr. Heera Was a Victim of Fraud and Bad Legal Advice

26. Rule 3.3 of the New York Rules of Professional Responsibility Conduct before a Tribunal: A lawyer shall not knowingly "offer or use evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know if its falsity…"

27. Paragraph (a)(3) requires that a lawyer must refuse to offer or use evidence that the lawyer knows to be false, regardless of the client's wishes. This duty is premised upon a lawyer's obligation as an officer of the court to ensure that the trier of fact is not misled by false evidence. See New York Bar Association Commentary on NYSB NY Rules of Professional Conduct (October 2021).

28. Mr. Heera sought the assistance of multiple law firms and a consultancy agency so as to secure immigration help. He was not privy to the particularities of the applications he was required to submit or that his prior attorney had already submitted. ***See Exhibit Q.*** Thus, he placed his faith in those with a greater understanding of the law. We cannot assume that Mr Heera was/is aware of immigration relief possibilities due to the fact that he is a foreigner who may be facing deportation or removal shortly.

29. In the initial filing of form l-360, Mr. Heera's Counsel filed it knowing that Mr. Heera was not qualified in the first place because the evidence clearly shows that his daughter was

born in 2003. When the application was filed in 2010, Mr. Heera's daughter was just seven years old. Despite knowing that the basis for l-360 was not possible, the counsel still pursued this option and even appealed the adverse outcome from the USCIS. This clearly exemplifies Mr. Heera's counsel's refusal to respect the law of the land and unethical behaviour with respect to the Rules of Professional Conduct.

30. Mr. Heera was further victimized by legal advisory when he retained Kims Consultancy. As exemplified by the paperwork filled and submitted by Kims agency, the agency did not include its name as the preparer, instead making it seem as if Mr. Heera solely filled and submitted the forms/application. Kims Agency further submitted the same application twice without waiting for the outcome of the first. To make it worse, the l-360 filed by this agency asserted VAWA, yet Mr. Heera was married to Joslyn at the time. Furthermore, Ms. Joslyn was not a USC or I-PR at the time of filing. The application claimed that Mr. Heera was being abused by a "Tieesha Dew", which was another misrepresentation. Besides, Mr. Heera has never remarried since Joslyn. Additionally, Mr. Heera's RFEs were not heeded to by Kims agency. Consequently, Mr. Heera was yet again disadvantaged by another legal advisor's actions.

31. Mr. Heera's former legal representatives had the responsibility of providing him with competent and precise legal counsel that would help him through the intricate immigration process. Contrarily, these legal representatives not only caused him significant harm by providing him faulty legal advice and submitting documents without his adequate comprehension, but they also engaged in potentially fraudulent practices.

32. The actions of Mr. Heera's former legal representatives are a clear case of fraud perpetuated by a former counsel. One of his former attorneys, Owolabi M. Salis of Salis Law P.C., was investigated by a competent court of law and disbarred for fraud and malpractice. See <u>In re</u>

Salis, 2023 N.Y. Slip Op. 61024 (N.Y. App. Div. 2023). ***See annexed article titled "Disbarred Brooklyn Attorney Indicted for Allegedly Continuing to Practice Law," Exhibit R.***

33. Mr. Owolabi Salis was indicted on charges of third-degree and fourth-degree grand larceny, second-degree criminal contempt, first-degree scheme to defraud, first-degree immigrant assistance services fraud, and unlawful practice of law. According to an investigative report, Mr. Owolabi charged each of his victims $4500 and misled them into believing that they were qualified to receive green cards and other immigration benefits. ***See annexed article titled "Attorney and Counselor-at-Law Owolabi Salis is Disbarred for Defrauding Immigrant Clients," Exhibit S.***

34. Unbeknownst to his immigrant clients, Mr. Owolabi filed his clients' applications using the federal I-360 form. This document is mainly reserved for the immigration petition of permanent residence for special immigrants such as, victims of domestic violence and Iraqi and Afghani translators. On the forms, Mr. Owolabi presented his clients as Self-Petitioning Parents of a U.S. Citizen Child or used other titles that were not recognizable eligible categories. For the clients with U.S. born children, Mr. Owolabi included their children's name under the category of a U.S. citizen abuser despite the non-existence of any elderly abuse allegations by the petitioners. Interestingly, most of these children were toddlers. ***See annexed article titled "When Top Attorneys Go Bad – The Tale of Owolabi M. Salis," Exhibit T.***

35. The actions of legal representatives such as Mr. Owolabi constitute a breach of the duty to provide professional and competent representation to Mr. Heera. By failing to correctly perform their legal responsibilities, Mr. Heera's legal advisors jeopardized his chances of obtaining lawful permanent resident status, hence inflicting tangible, and substantial damage. Mr. Heera's reliance on the legal advisors' expertise led to detrimental results, further underscoring their negligence due to the consequential harm suffered.

36. In "Strickland v. Washington," the United States Supreme Court established a two-part test to evaluate claims of ineffective assistance of counsel in criminal cases. While this case pertains to criminal proceedings, the principles it sets forth can be analogized to Mr. Fareed Heera's situation, where he alleges legal malpractice by his former representatives. Thus, the Strickland test can serve as a framework to assess whether Mr. Heera received competent and effective legal representation in his immigration case, and hence provide compelling support for his claim of legal malpractice. See Strickland v. Washington, 466 US 668, 669 (1984).

37. The first prong of the Strickland test examines whether Mr. Heera's former legal representatives' performance fell below an objective standard of reasonableness. In Mr. Heera's case, his former counsel submitted documents on his behalf without his understanding of their content or implications, leading to a denial of his Form I-485 application. This action not only illustrates a lack of transparency and communication on their part but also raises a question regarding their competence in guiding Mr. Heera through the complexities of the immigration process. Just as the Court in Strickland emphasized the need for attorneys to provide reasonably competent assistance, Mr. Heera's former counsel failed to fulfil such duty by submitting documents that were not only inexplicable to Mr. Heera's understanding and circumstances, but also adversely affected his immigration prospects without acquiring his informed consent.

38. The second prong of the Strickland test requires a showing that the deficient performance of counsel prejudiced the outcome of the case. Applying this to Mr. Heera's situation, the connection between the former counsel's inadequate representation and the denial of his immigration application is manifest. Had Mr. Heera been properly advised about the documents submitted on his behalf and the potential consequences, he might have been able to rectify the situation or seek alternative avenues of relief. The denial of his application directly stems from the

actions of his former counsel, indicating a causal link between the legal advisors' conduct and the adverse outcome. The prejudice ensuing from their deficient performance is underscored by the probable lawful permanent resident status he might have obtained if he had received competent guidance.

39. Drawing parallels between "Strickland v. Washington" and Mr. Heera's case, it is apparent that the <u>Strickland</u> test can provide a useful framework for assessing legal malpractice claims in immigration matters. Just as the Court in Strickland emphasized the importance of effective assistance of counsel in criminal cases, so does the principle extend to immigration cases where the guidance of attorneys is vital to securing immigration benefits. The failure of the former counsel to provide competent and transparent representation, which resulted in the denial of Mr. Heera's application, thus aligns with the Strickland standard for deficient attorney performance and subsequent prejudice.

40. The two-part test offers a compelling basis to demonstrate Mr. Heera's counsels' bad legal advisory, inadequate performance, and the resultant harm inflicted upon his immigration prospects. Just as Strickland upholds the rights of defendants to effective assistance of counsel in criminal proceedings, Mr. Heera's pursuit of lawful permanent resident status should not be undermined by negligent legal representation. The Federal and New York State Constitutions guarantee Defendants the right to effective assistance of Counsel. See also US Constitution, Art. I, § 6; <u>People v. Caban</u>, 5NY 3d 143, 155-156 (2005). See also <u>Kleindienst v Mandel</u>, 408 US 753 [1972], which establishes the principle that courts ought to intervene when the Executive Branch excludes aliens during its exercise of power without a compelling constitutional reason.

### B. Mr. Heera Has Not Committed Wilful Misrepresentation Under INA

41. Any alien who, by fraud or wilful misrepresentation of a material fact, seeks to adjust status (or has sought to procure or has procured), procure other documentation, gain admission into the United States, or any other benefit provided under this chapter is inadmissible. (lNA section 212(a)(6)(c)).

42. Mr. Heera does not intend to commit fraud against the government by misrepresenting significant facts in order to adjust status. To emphasize, Mr. Heera lacked sufficient process knowledge and depended heavily on his previous lawyers and representatives. Mr. Heera believed he was submitting the correct application on proper grounds on each occasion. Mr. Heera was completely unaware of the deception and schemes manufactured by his former counsel and the agency while representing him. ***See Exhibit N.***

### C. Due Process Violation

43. The denial of Mr. Heera's Form I-485 application also raises concerns on whether his right to due process was respected during the application process. Mr. Heera's application was denied without proper consideration of his circumstances and relevant evidence. His due process rights were violated because: a) he did not receive adequate notice regarding the issues within his application, b) he was not provided an opportunity to address concerns raised by the USCIS, and c) the USCIS failed to consider his legitimate claims for relief. Contrary to the Fifth Amendment of the U.S. Constitution, which ensures that no person shall be deprived of life, liberty, or property without due process of law, Mr. Heera's right to a fair and impartial decision-making process was compromised due to procedural shortcomings and oversights that occurred during the application review. See <u>Mathews v Eldridge</u>, 424 US 319 [1976], which outlines the factors to consider when

determining the violation of due process rights, i.e., analyzing the affected private interests, the risk of erroneous deprivation, and the government's interest.

### D. Equitable Relief and Administrative Review

44. Mr. Heera's USC daughter is undergoing psychological treatment with her therapist due to her debilitating depression. Mr. Heera has always been there for his daughter. If Mr. Heera is not allowed to adjust his status and is eventually removed from the country, there is a probability that his daughter's mental condition will worsen. She needs her family, and especially her father, to be in her life and within close proximity. ***See Exhibit Q.***

45. For more than the two decades that Mr. Heera has lived in the US, he has not been convicted of a felony, nor does he have any pending criminal cases. He owns properties, maintains close legal ties in the US, and continuously pays taxes to the government.

46. In line with 5 U.S.C. §§ 701-706 and given the new evidence that has surfaced regarding the actions of Mr. Heera's former counsel, it is imperative to consider a review of his case so as to ensure justice is served. Administrative review provides a mechanism to re-evaluate his application in light of the circumstances that have come to light, which could possibly lead to a just outcome. Furthermore, the doctrine of equitable relief recognizes the need to address unique and exceptional circumstances that may not fit within traditional legal frameworks. Mr. Heera's case is emblematic of such non-traditional circumstances. Therefore, the potential hardship his family would face upon his removal from the United States underscores the need to consider equitable relief. See <u>Tulalip Tribes v Suquamish Indian Tribe</u>, 794 F3d 1129 [9th Cir 2015]; Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b).

47. It has been established that Mr. Heera's former counsel engaged in fraudulent activities, misrepresentation, and professional misconduct in the handling of his case, which raises

serious ethical and legal concerns.[1] The deliberate submission of documents without his understanding or consent, along with potential fraudulent practices, compromises the integrity of the legal field and the trust that clients place in their attorneys. Such actions not only warrant legal action against Mr. Heera's former counsel, but also emphasize the need to remedy the harm inflicted on Mr. Heera's immigration prospects. See <u>Hazel-Atlas Glass Co. v Hartford-Empire Co.</u>, 322 US 238 [1944].

48.  The facts surrounding Mr. Heera's case present compelling arguments across various causes of action. Each of these claims underline the gravity of the situation and the need for a thorough review of the denial decision in order to ensure that justice is served, and that Mr. Heera's rights are protected. His pursuit of lawful permanent resident status should not be thwarted by the actions of his former legal representatives. Subsequently, a remedy should be sought to address the harm he has endured.

**PRAYER FOR RELIEF**

WHEREFORE, and in light of the foregoing, Plaintiff prays:
a. That the Court assume jurisdiction herein;
b. That the Court compel the Defendants to reconsider their decision on Mr. Heera's I-485 Application to Register Permanent Resident or Adjust Status;
c. That the Court award Plaintiff reasonable attorney's and court fees; and
d. That the court grant such other and further relief as the Court deems appropriate and just.

Dated: Jamaica, NY
October 6, 2023

/s/ Naresh M. Gehi
Naresh M. Gehi, Esq.
Gehi & Associates, P.C.
Attorney for Plaintiffs
173-29 Jamaica Ave.
Jamaica NY 11432
(718) 764-6911
court@gehilaw.com.

---

[1] See New York Bar Association Commentary on NYSB NY Rules of Professional Conduct (October 2021).